# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff/Respondent,

v.            No. CIV 13-494 JB/LFG
            No. CRIM 10-3244 JB

JAMES CRAMBERG,

    Defendant/Movant.

## MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDED DISPOSITION[1]

### Findings

1.  On May 29, 2013, Movant James Cramberg ("Cramberg") filed a federal habeas motion under 28 U.S.C. § 2255, to vacate, set aside or correct his sentence.[2]  [Doc. 1.]  On July 9, 2013, in accordance with the Court's Order [Doc. 4], Cramberg filed a motion and application setting forth all of his § 2255 claims.  [Doc. 6.] The application states that Brian A. Pori ("Pori"), Cramberg's previous attorney in the criminal proceeding (No. CR 10-3244 JB), appeared only for

---

[1] **Within fourteen (14) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations.  A party must file any objections with the Clerk of the U.S. District Court within the 14-day period allowed if that party wants to have appellate review of the findings and recommendations.  If no objections are filed, no appellate review will be allowed.  *See, e.g.*, Wirsching v. Colorado, 360 F.3d 1191, 1197 (10th Cir. 2004) ("firm waiver" rule followed in Tenth Circuit holds that a party who fails to object to magistrate judge's findings and recommendations in timely manner waives appellate review of both factual and legal questions).**

[2] *See* Order to Cure Filing Deficiency [Doc. 4] for an explanation of the two petitions Cramberg filed on May 29, 2013, and the Court's requirement that Cramberg properly file and sign a single, amended petition raising all his claims.

purposes of submitting the application. [Doc. 6 at 14.]  On August 27, 2013, the United States filed

a response to the § 2255 motion. [Doc. 10.]  On September 13, 2013, Cramberg, acting *pro se*, filed

a reply. [Doc. 11.] Cramberg currently is incarcerated at the Federal Correctional Institution in El

Reno, Oklahoma. [Id.]  Cramberg's § 2255 motion specifically challenges, in part, the $10,000 fine

imposed by United States District Court Judge James O. Browning at sentencing. [Doc. 6.]

       2.      In making its recommendations, the Court examined the pertinent pleadings, filings,

attachments, and transcripts in this civil matter and the related criminal case.[3]  After carefully

considering the pertinent law, all filings, including the plea transcript and sentencing hearing

transcript, and argument by parties, the Court recommends that Cramberg's § 2255 motion be denied

and dismissed, with prejudice.  Because it is possible to resolve the issues on the pleadings, and the

record establishes conclusively that Cramberg is not entitled to relief, the Court finds that no

evidentiary hearing is necessary.  *See* 28 U.S.C. § 2255(b); <u>United States v. Gonzalez</u>, 596 F.3d

1228, 1244 (10th Cir.) (no basis to hold evidentiary hearing where "there were no relevant, disputed

issues of fact that needed to be resolved"), *cert. denied*, 131 S.Ct. 172 (2010).

## Background

       3.      On December 1, 2010, a federal grand jury indicted Cramberg, charging him with

a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (felon in possession of a firearm and

ammunition). [CR Doc. 4.] On March 23, 2011, Cramberg was arrested. [CR No. 14.]

       4.      On October 17, 2011, Cramberg consented to have a Magistrate Judge take his plea.

[CR Doc. 36.]  On that same date, Cramberg's written and signed plea agreement was entered. [CR

Doc. 37.]

---

[3]The Court refers to pleadings in the criminal case, No. CR 10-3244, as CR Doc. __.  Pleadings in
this civil habeas proceeding are referred to as Doc. ___.

5.      The plea agreement stated that Cramberg understood the maximum penalty the Court could impose at sentencing, *i.e.*: imprisonment for a period not more than ten (10) years; a fine not to exceed the greater of $250,000; a mandatory term of supervised release of not more than three (3) years; and a mandatory special penalty assessment of $100.00.  [Id., p. 2, ¶ 4.]

6.      In the plea agreement, the parties agreed to a three-level reduction from the offense level, provided Cramberg continued to accept responsibility for his criminal conduct.  [Id., p. 4, ¶ 9a.] The United States stipulated that, at sentencing, it would recommend the low end of the imprisonment range of the appropriate sentencing guideline.  [Id., p. 5, ¶ 9c.] The plea agreement further states that Cramberg understood the stipulations were not binding on the Court and that the Court had the discretion whether or not to accept the stipulations after it reviewed the presentence report ("PSR"). [Id., p. 5, ¶ 10.]  Moreover, Cramberg understood that the Court could choose to vary from the advisory guideline sentence. [Id.] "[Cramberg's] final sentence is solely within the discretion of the Court." [Id.]

7.      With respect to appeal rights, the plea agreement expressly stated:

> [Cramberg] knowingly waives the right to appeal the Defendant's conviction and any sentence ***and fine*** within or below the applicable advisory guideline range as determined by the Court.  The Defendant specifically agrees not to appeal the Court's resolution of any contested sentencing factor in determining the advisory sentencing guideline range.  In other words, the Defendant waives the right to appeal both the Defendant's conviction and [waives] the right to appeal any sentence imposed in this case except to the extent, if any, that the Court may depart or vary upward from the advisory sentencing guideline range as determined by the Court.

[Id., p. 6, ¶ 11] (emphasis added).  Further, Cramberg agreed to waive any "collateral attack to [his] conviction pursuant to 28 U.S.C. § 2255, except on the issue of counsel's ineffective assistance ***in negotiating or entering this plea or this waiver.***" [Id., pp. 5-6] (emphasis added).

3

8.      The plea agreement provides that Cramberg had reviewed all aspects of the case with counsel and was fully satisfied with his attorney's legal representation.  [Id., p. 1, ¶ 1.]  Cramberg affirmed that "this plea of guilty is freely and voluntarily made and is not the result of force, threats, or promises (other than the promises set forth in this agreement)." [Id., p. 7, ¶ 14.]   The plea agreement states that it is a complete statement of the agreement in this case.  It was signed by Cramberg's attorney, Pori, and Cramberg.  The language above Cramberg's signature states that the plea agreement was read to him in the language he understood best and that he carefully discussed every part of it with Pori.  There were no promises or inducement made to Cramberg other than what was contained in the plea agreement.  In the plea agreement, Cramberg again agreed that he was satisfied with the representation of his attorney. [Id., pp. 8-9.]

9.      On October 17, 2011, the United States Magistrate Judge held a plea hearing in this matter. [Doc. 67, transcript.]  The Court noted Cramberg's consent to proceed before a Magistrate Judge in a felony case and further indicated that Cramberg executed the original plea agreement. [Doc. 67 at 3.]  Cramberg was represented by attorney Pori at the plea hearing.

10.     During the plea hearing, the Assistant United States Attorney ("AUSA") explained the maximum penalties that could be imposed, including a fine of $250,000.  [Id. at 4.]  The AUSA noted the waiver of appellate rights and explained that the waiver was consistent with language in the plea agreement. [Id. at 4-5.] Pori agreed with the AUSA's summary of the plea agreement and noted only that the parties agreed to reserve their right to assert any request for variance or adjustment under the guidelines as set out in paragraph 9(d) on page 5 of the plea agreement. [Id. at 5.]

11.     At the plea hearing, the Magistrate Judge asked Cramberg a number of questions in assessing whether Cramberg's plea of guilty was freely and voluntarily made. [Id. at 5-13.]

4

Cramberg agreed he had reviewed the plea agreement with counsel and that his attorney satisfactorily explained the agreement to Cramberg.   In addition, Cramberg affirmed that his attorney investigated the charges for him and interviewed him.   Cramberg had no complaints about counsel's representation. The Magistrate Judge explained to Cramberg that the District Judge could sentence him to a more severe sentence than might be anticipated.   Cramberg stated he understood this and that he was entering a plea of guilty on his own free well.   [Id. at 9.]   Cramberg testified under oath that he understood the maximum penalties in relation to his guilty plea. [Id.] The Magistrate Judge informed Cramberg that any estimate of the sentence to be imposed, by the Defendant's attorney, was only an estimate.   The sentence imposed by Judge Browning could differ from the estimate.   Cramberg understood. [Id. at 10.] The Magistrate Judge specifically advised Cramberg that by entering a plea of guilty he was giving up his right to appeal the conviction or sentence as long as the sentence was within the guideline range.   Cramberg again stated he understood. [Id. at 12.]

      12.     On November 22, 2011, the United States Probation Office ("USPO") provided the PSR.  [Doc. 10 at 2.]   In the PSR, Cramberg's base offense level was 24 in accordance with the United States Sentencing Guideline ("USSG") § 2K2.1(a)(2).   The USPO enhanced Cramberg's base offense level by two levels in accordance with USSG § 2K2.1(b)(4)(A) because the firearm Cramberg possessed was stolen.   This resulted in an adjusted offense level of 26.   The PSR reduced the adjusted offense level by three levels in accordance with the stipulation and Cramberg's acceptance of responsibility.   The total offense level was 23.   [Doc. 10 at 2.]   The USPO calculated Cramberg's criminal history category as IV.   Based on a total offense level of 23 and a criminal history category of IV, USPO arrived at a guideline imprisonment range of 70 to 87 months. [Id.] (citing PSR, ¶ 85).

13.     In the PSR, the USPO noted that a fine appeared inappropriate and "not feasible." [Id.] (*citing* PSR, ¶ 83). The PSR further provided that "[t]he maximum fine is $250,000. . . ." The PSR indicated that the guideline range for a fine "for the instant offense is from $10,000 to $100,000, pursuant to USSG § 5E1.2(c)(3)." [Id.] (*citing* PSR, ¶ 94).

14.     On January 14, 2012, Cramberg filed a sentencing memorandum, requesting that the District Court Judge impose a sentence of no more than 37 months. [CR Doc. 41 at 1.] In the alternative, Cramberg asked that the District Court depart or vary from the recommended sentence range because of Cramberg's "chronic addiction to methamphetamine and because [his] criminal history category over represents the seriousness of his prior criminal conduct or the likelihood that he will recidivate." [Id. at 1-2.] Cramberg stated that he did not object to any factual statements in the PSR but sought to add several statements. The sentencing memorandum discussed Cramberg's extensive history of drug abuse. It did not address the issue of a fine.

15.     The government filed a response to the sentencing memorandum, specifically addressing Cramberg's criminal history. [CR Doc. 43.] According to the government, Cramberg had been arrested at least fifteen (15) times and had incurred seven (7) felony convictions. [Id. at 9.] The government further argued that a sentence within the guideline range was the best approach under the circumstances.

16.     The District Court conducted a sentencing hearing on February 3, 2012. [Sentencing Hearing Transcript ("Tr.").] Attorney Pori was present with Cramberg. Cramberg testified that he had reviewed the PSR and the Addendum. [Tr. at 4.] The Court noted there were no issues in dispute and further observed its receipt of a number of letters sent on Cramberg's behalf. [Id. at 4-5.] Judge Browning discussed Cramberg's sentencing memorandum, including the request for a downward departure from the guideline imprisonment range of 70 to 87 months and his position regarding an

over representation of criminal history.  The Court heard additional argument from counsel regarding these positions. [Id. at 8-10.] The AUSA asserted that because there was a conviction for an aggravated assault against a household member, for which Cramberg received no criminal history points, his criminal history actually was under represented.  [Id. at 10.] The Court denied the request for a downward departure and concluded that a criminal history category of IV was appropriate. [Id. at 12.]

17.    The Court also heard lengthy argument concerning Cramberg's position that his drug addiction and mental impairments entitled him to a downward departure.  [Id. at 13-20.]  The Court denied the request for a downward departure based on diminished capacity. [Id. at 26.]

18.    The Court asked if Cramberg wished to address the Court, and Cramberg requested leniency. [Id. at 28.]

19.    Pertinent to the habeas petition before the Court, Judge Browning then stated:

> Court:  You indicate you have some property down in Belen.  What is that?  I didn't quite understand.  Is that property in your mother's name or is that in your name?
>
> Defendant: It's in my mother's name.
>
> Court: It's in your mother's name, but you kind of consider it yours?
>
> Defendant: Yes.
>
> Court: What's the value of that property?
>
> Ms. Saenz (Cramberg's mother): I'm not really sure, Your Honor.  I think it's maybe 25 – to 30,000 [dollars].

[Id. at 29.] The Court asked the AUSA his thoughts on an appropriate sentence and if the government had any interest in pursuing a fine. [Id. at 29-30.]

7

20.     The AUSA observed that the low end of the guideline range, 70 months, was supported.  [Id. at 30-31.] With respect to the question of a fine and Cramberg's property, the AUSA stated:

> AUSA: Well, he's got – you know, I don't know whether the property belongs to his mother, if it's in his mother's name.  But apparently he owns it, and I would think that a fine would be appropriate in this case, Your Honor.  I mean he does have an asset. If the property is worth $30,000, then obviously it's an asset that Mr. Cramberg has.  And he's getting a free lawyer.

[Id. at 32.]

21.     The District Court sentenced Cramberg to a 70-month term of imprisonment. [Id. at 37.] The Court found that "[b]ased on the defendant's financial resources, he does appear to have resources."  The Court imposed a fine of $10,000. [Id. at 40-41.] Attorney Pori objected to the imposition of the fine "in strong terms." [Id. at 42.] Defense counsel argued that the Court adopted the findings of the PSR (which did not include recommendation of a fine) and observed that the fine was based on nothing more than a "self-assessment of 5 acres of land in Belen that [Cramberg's] mother has given us here on the spot today."  [Id. at 43.]  Attorney Pori was not certain if the property was worth that much and argued that Cramberg did not have access to a "liquid asset valued at $10,000."  According to Pori, Cramberg was indigent and qualified for the assistance of a free attorney. [Id.]  Pori further argued that Cramberg already was facing significant financial responsibilities attendant to the conviction, including participation in an outpatient program for which he was to pay a portion.  Pori asserted that by the time Cramberg was released from prison, it was not likely he could obtain sufficient employment to come up with $10,000.  Counsel asked the Court not to impose the fine. [Id. at 43-44.]

22.     The AUSA again asserted that Cramberg had an asset, and "just because it's in his mother's name, does not mean that he cannot control the disposition of that property and make it into a liquid asset."   The AUSA could not estimate the value of the property but imagined Cramberg's mother knew its value.   The Court observed that it had a valuation from Cramberg's mother, that five acres were at issue, and that the Court had "a little bit of sense of the value of lands down in Belen from doing a lot of work down there."   [Id. at 45.]   The Court concluded that Cramberg had land and had the ability to pay a fine.   Judge Browning declined to change the conditions and left the fine imposed. [Id. at 45.]

23.     At the end of the sentence hearing, the District Court observed that Cramberg had entered into a plea agreement that waived any right to appeal the conviction and sentence that was within or below the advisory guideline.   Because Cramberg's "sentence was within the low end of the guideline range, [] you've effectively waived the right to appeal the sentence itself."   [Id. at 46-47.]   The Court further advised that waivers are generally enforceable.   The Court restated Cramberg's waiver of the right to appeal the final sentence.   Cramberg stated that he understood the waiver. [Id. at 47-48.]

24.     On May 29, 2012, Judge Browning entered a Memorandum Opinion and Order denying the requests set out in Cramberg's sentencing memorandum. [CR Doc. No. 54.] The Court observed that the USPO filed an addendum to the PSR to address Cramberg's requests for departures and concluded that a departure was not appropriate. [Id. at 5.]   On May 29, 2012, the Court issued a Judgment reflecting the sentence. [CR No. 55.]

25.     On June 7, 2012, Cramberg filed a Motion for Order of Modification of Sentence. [CR Doc. 56.] Cramberg's motion stated the Court's imposition of a fine was based on its finding that Cramberg had the financial means to pay a fine, which, in turn was based on a "promise by Mr.

Cramberg's mother, Rosemary Saiz, to pass some property in Valencia County to Mr. Cramberg upon her death.  Since the entry of the fine in this case, Ms. Saiz has relented and decided not to leave the property to Mr. Cramberg upon her death." [Id. at 1.] Thus, Cramberg asserted that he "does not now own the property upon which the court relied to impose a fine and that he no longer has the financial means to pay the fine . . . ."  Cramberg asked the Court to modify its judgment by eliminating the fine based on his inability to pay it.

26.     On August 21, 2012, Judge Browning issued a Memorandum Opinion and Order concluding the Court did not have the statutory authority to grant the relief Cramberg requested. [CR Doc. 59.]  The Court specifically referred to the following portion of the PSR with respect to the fine:

> The defendant reported no assets.  He reported he owned land in Belen, New Mexico.  He had planned on using it to retain an attorney; however, his attorney is appointed and he maintains possession of the property.  His mother indicated the property is in her name, but it belongs to the defendant.  He could not provide an estimate for the value of the five acres.  He indicated he may have liabilities which would include medical bills; however, an Experian credit report on September 10, 2011, revealed no credit information.  Further, the defendant[] is represented by Court appointed counsel.

[CR Doc. 59 at 2] (*citing* PSR, ¶ 82).  The Court noted the USPO's recommendation that a fine appeared inappropriate and not feasible based on Cramberg's financial circumstances, which included long-term unemployment, no financial assets, and no income. [Id.] (*citing* PSR, ¶ 83).

27.     In denying the motion for modification, the Court observed case law standing for the proposition that a district court did not have inherent authority to modify a previously imposed sentence and could do so only with statutory authorization.  [CR Doc. 59 at 4.] The Court noted some instances where modification might be permitted, but found it did not have statutory authority to modify the fine under the facts presented. [Id. at 8.]

> The fine is part of his sentence, or, in other words, the punishment the Court imposed on him. Cramberg has not identified, and the Court has not found, any statutory basis that would permit it to modify his sentence. Absent statutory authority, the Court does not have the authority to modify Cramberg's sentence.

[Id.] The Court further observed that a fine was part of a defendant's punishment or "the punishment imposed." Thus, like a modification of Cramberg's term of imprisonment, a modification of Cramberg's fine also required statutory authority that the Court determined was lacking.

28.     The Court further found that the motion for modification, if brought under Rule 35, was untimely. If raised under Rule 36, there was no allegation of a clerical error in the sentencing process. Thus, the basis for seeking a reduction in Cramberg's sentence, which included reduction or elimination of the fine, did not fall within the narrow set of circumstances that Congress provided for courts to reduce sentences of criminal defendants. [Id. at 9-10.]

29.     There was no appeal taken.

30.     Cramberg's § 2255 motion asserts three claims of ineffective assistance of counsel: (1) Attorney Pori informed Cramberg that if he pled guilty, he would face a sentence of 46 to 57 months; because of this promise that was not kept, Cramberg did not knowingly and voluntarily enter his guilty plea;[4] (2) Pori failed to investigate Cramberg's financial assets, failed to object to those portions of the PSR that "erroneously indicated" Cramberg possessed certain real property in Belen, failed to present evidence to show Cramberg lacked the financial resources to pay a fine, and

---

[4]While Cramberg characterizes this as ground one, he appears to challenge both the imposition of the fine and the imposition of the 70-month period of incarceration. [Doc. 6 at 5, ¶ 12.] Thus, the Court addresses the claim as raising two challenges.

failed to rectify these errors by filing a timely motion for modification; and (3) Pori failed to file an appeal notwithstanding Cramberg's specific direction to file an appeal. [Doc. 6.]

31.     The government concedes that the § 2255 motion was filed timely. [Doc. 10 at 5-6.]

## Analysis

32.     Ineffective assistance of counsel claims are analyzed under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, *reh'g denied*, 467 U.S. 1267 (1984).  To satisfy the Strickland requirements, the movant must prove that trial counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. at 687.  Second, the movant must show that trial counsel's deficient performance prejudiced him to the degree that he was deprived of a fair trial.  Id.  *See* Byrd v. Workman, 645 F.3d 1159, 1167 (10th Cir.) (explaining that the movant "must show both that his counsel's performance 'fell below an objective standard of reasonableness,' and that 'the deficient performance prejudiced the defense.'") (*relying* on Strickland, 466 U.S. at 687-88), *cert. denied*, 132 S.Ct. 763 (2011).  If the movant is unable to show either "deficient performance" or "sufficient prejudice," the ineffective assistance claim necessarily fails.  Hooks v. Workman, 606 F.3d 715, 724 (10th Cir. 2010).

33.     In Strickland, the United States Supreme Court emphasized that judicial scrutiny of counsel's performance must be highly deferential.  Strickland, 466 U.S. at 687.  A court should not second-guess counsel's representation after an adverse verdict or sentence.  An attorney's performance should be evaluated from counsel's perspective at the pertinent time, thereby eliminating any distorting effects of hindsight.  A court must indulge a strong presumption that counsel's conduct was reasonable and could have been considered sound trial strategy.  Id.  To be constitutionally deficient, an attorney's performance "must have been completely unreasonable, not merely wrong."  Byrd, 645 F.3d at 1168.  And, to demonstrate prejudice, the movant must show that

"there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. (citation omitted).

34.    It is well established that the <u>Strickland</u> ineffective assistance of counsel two-pronged inquiry applies to challenges to a guilty plea.  <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985).  For example, in <u>Hill</u>, the Supreme Court acknowledged that ineffective assistance of counsel could render a guilty plea involuntary where a defendant who has accepted a plea offer can later establish that, but for counsel's erroneous advice, he would not have pled guilty and would have gone to trial. <u>Id.</u>, 474 U.S. at 56-59.

35.    In <u>United States v. Graham</u>, 312 F. App'x 79, 85 (10th Cir. Jan. 3, 2008) (unpublished), <em>cert. denied,</em> 554 U.S. 907 (2008), the Tenth Circuit articulated the test as follows:

> Under the first part of the <u>Strickland</u> test, [the movant] must show that his counsel's representation "fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688, 104 S.Ct. 2052.  He must thus show that his counsel's advice to plead guilty was outside "the range of competence demanded of attorneys in criminal cases." <u>Hill</u>, 474 U.S. at 56, 106 S.Ct. 366.

The second prong of the <u>Strickland</u> test "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.  In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Id.</u> (citation omitted).

### 1.    *First Ineffective Assistance of Counsel Claim:*

36.    With respect to the first claim of ineffective assistance of counsel, the Court concludes there is no support for the allegation that Attorney Pori promised Cramberg a sentence of 46 to 57 months or that such alleged promise rendered Cramberg's guilty plea involuntary or

unknowing.  The Court carefully reviewed the language of the plea agreement and the Rule 11 plea colloquy.  *See* discussion above.  At the plea hearing, the Magistrate Judge conducted a thorough inquiry and found that Cramberg's guilty plea was knowing and voluntary.  Cramberg affirmed under oath that he understood the plea agreement, the consequences of a guilty plea, the maximum penalties possible, and the rights he was waiving.  The Magistrate Judge expressly informed Cramberg to "[p]lease understand that any estimate of the sentence which may have been given you by Mr. Pori . . . is still an estimate of the sentence.  The sentence imposed by Judge Browning may differ from the estimate given you by Mr. Pori."  Cramberg represented that he understood this. [CR Doc. 67 at 10.]

37.     Cramberg acknowledged that the plea agreement included his entire agreement with the government.  In other words, Cramberg could have asserted at the plea hearing that he had been promised a lower sentence, but he did not do so.  He further represented that he had discussed the plea agreement with counsel, he was satisfied with counsel's representation and advice, he was not threatened or induced into pleading guilty, and he was guilty as charged.  The truth and accuracy of an accused's statements at a Rule 11 proceeding are regarded as conclusive "in the absence of a believable reason justifying departure from their apparent truth."  United States v. Bambulas, 571 F.2d 525, 526 (10th Cir. 1978).

38.     In addition, Judge Browning considered Cramberg's sentencing memorandum seeking a lower sentence and found no basis to grant it. [CR Doc. 54.] There was no argument in the briefing about this very matter that indicated a promise was made to Cramberg as to the sentence he would receive.

39.     The Court concludes that counsel's performance during plea negotiations was neither constitutionally deficient nor prejudicial.   For example, Cramberg did not establish that, but for

14

counsel's alleged erroneous advice, he would not have pled guilty and would have gone to trial. Cramberg had a "full understanding of what the plea connote[d] and of its consequences." *See* Boykin v. Alabama, 395 U.S. 238, 244 (1994). Further, as evidenced by the plea agreement and plea colloquy, Cramberg understood the "direct consequences" of his plea. *See* United States v. Hurlich, 293 F.3d 1223, 1230 (10th Cir. 2002). The Court determines that Cramberg voluntarily and knowingly entered into a guilty plea, and that there is no evidence that he was forced or induced to plead guilty. Therefore, the Court recommends that the first claim of ineffective assistance of counsel be denied and dismissed.

### 2.    *Second Ineffective Assistance of Counsel Claim:*

40.    Cramberg's second claim of ineffective assistance of counsel relates to the Court's imposition of a $10,000 fee. Cramberg asserts that had his attorney properly investigated his assets and presented evidence to contradict provisions in the PSR about his assets, the Court would not have imposed a fine. [Doc. 6 at 18.]

41.    First, at the time the USPO prepared the PSR, there was not evidence that would have contradicted the provisions concerning assets and the assessment of a fee. The USPO relied on representations by Cramberg and his mother that Cramberg was to receive the property in Belen, that it was Cramberg's property upon his mother's death, and that the land belonged to Cramberg. Notwithstanding these statements made by Cramberg and his mother, the USPO recommended that a fine was not appropriate or feasible. Cramberg does not identify any evidence available at the time the USPO prepared the PSR that would have contradicted the pertinent provisions. Moreover, even the USPO made a recommendation that the Court not fine Cramberg, but the District Court was not obligated to accept that recommendation. The fine imposed was well under the maximum fine possible, *i.e.,* it was below $250,000.

15

42.     Next, the Court evaluates Attorney's Pori's perspective about Cramberg's assets at the time of the alleged error and in light of all the circumstances.  *See* Kimmelman v. Morrison, 477 U.S. 365, 381 (1986).  At the sentencing hearing, Pori, the Court, the USPO, and the AUSA had good reason to believe that, although the five acres in Belen were not in Cramberg's name, Cramberg believed the land was his.  Indeed, Cramberg reported to the USPO that he owned land in Belen, New Mexico.  He had plans for the land and stated he "maintain[ed] possession of the property."  His mother purportedly informed the USPO that the property was in her name, but that it "belonged to [her son]." [PSR, p. 21, ¶ 82.]

43.     At the sentencing hearing, Cramberg testified, under oath, that he considered the property to be his, even though it was in his mother's name. [Tr. at 29.] Both Cramberg and his mother testified at the sentencing hearing and could have informed the Court that the property was not Cramberg's.  This did not occur, nor was there any indication by Cramberg or his mother that the Court misunderstood the ownership of the land.

44.     Moreover, Cramberg's motion for modification clears up any confusion about this issue.  It states that Cramberg's mother had promised to pass on the property in Belen to Cramberg upon her death.  [CR Doc. 56.] Thus, any investigation by Pori would have turned up this very same information before the plea agreement or before the sentencing hearing.  Cramberg informed counsel, the Court, and the USPO that he was promised the land and believed it to be his.

45.     In addition, the motion for modification confirms that before the Court imposed the fine at the sentencing hearing, Cramberg's mother had promised to pass on the land to Cramberg and intended to do so.  Only upon the entry of the fine, according to Cramberg's motion, did Cramberg's mother "relent[] and decide[] not to leave the property to Mr. Cramberg upon her death." [CR Doc. 56.] And only after the Court imposed the fine did Mr. Cramberg state he "does

not **now** own the property . . . ." [Id.] Thus, in terms of counsel's possible investigation of Cramberg's assets before the entry of the plea agreement or before sentencing, the only information available was that which Cramberg and his mother provided to the USPO – that is, the property was in Cramberg's mother's name, she had promised to bequeath the land to Cramberg, and Cramberg considered the property his at all pertinent times, until **after** Judge Browning imposed a fine.  Again, as stated in the motion for modification, Cramberg stated he "no longer" had the financial means to pay the fine because his mother changed her mind after the fine was imposed. [Id.]

46.     Based on these circumstances, the Court concludes that attorney Pori's performance did not fall "below an objective standard of reasonableness."  Even if defense counsel's performance could be considered constitutionally defective, there is no evidence of prejudice.  In other words, Cramberg did not demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" or that Cramberg would not have plead guilty and would have proceeded to trial where he risked a significantly longer sentence if found guilty.

47.     In addition, the Court is unconvinced that Cramberg's counsel provided ineffective assistance of counsel based on the position that the motion for modification was untimely.  In its Memorandum Opinion and Order denying the motion for modification, Judge Browning observed, *inter alia*, that if the motion was brought under Rule 35(a), it was untimely as it had to have been filed within 14 days of sentencing. [CR Doc. 59 at 9] (*citing* Fed. R. Crim. P. 35(a)).  Cramberg's motion for modification was not filed until several months after the Court pronounced the sentence.  However, this was not the sole basis for the Court's denial of the motion for modification.  Rather, Judge Browning observed that "Cramberg has not identified, and the Court has not found, any statutory basis that would permit it to modify his sentence." [CR Doc. 59 at 8.] Moreover, even if

17

Cramberg had filed a timely Rule 35 motion, he still had to demonstrate that the Court's sentence resulted from an arithmetical, technical, or other clear error.  Fed. R. Crim. P. 35(a).  There is no such evidence.  The District Court noted that Cramberg was asking it to change the fine imposed "based [on] intervening circumstances," i.e., his mother's change of heart after hearing the imposition of the fine.  There was no evidence of inadvertent, clerical, technical, or clear error.

48.     The Court does not find that attorney Pori's performance was "completely unreasonable" under the circumstances or that, but for Pori's failure to investigate Cramberg's assets more fully and to file a timely Rule 35 motion, the Court would not have imposed the fine.  Indeed, during the sentencing hearing, Pori argued vigorously that the Court should not impose the fine, but the Court rejected those arguments.  Again, Cramberg and his mother had the opportunity to clarify at the sentencing hearing any misunderstanding the Court had regarding Cramberg's assets and the mother's intentions.   Therefore, the Court recommends that the second claim of ineffective assistance of counsel be denied and dismissed.

### 3.     *Third Ineffective Assistance of Counsel Claim:*

49.     Cramberg argues that he instructed his attorney to file an appeal but no appeal was filed.  It is well-established that a "lawyer who disregards specific instructions to perfect a criminal appeal acts in a manner that is both professionally unreasonable and presumptively prejudicial."  United States v. Snitz, 342 F.3d 1154, 1156 (10th Cir. 2003) (citations omitted).  However, a conclusory, self-serving assertion that the defendant requested his attorney to file an appeal is not sufficient.  The defendant must provide some "credible testimony" to support the argument or "detailed and specific facts to back up his allegation."  *See* United States v. Harrison, 375 F. App'x 830, 834 (10th Cir. Mar. 31, 2010) (unpublished).  Here, Cramberg did not describe when he gave such purported directions to his attorney or what specific instructions he gave his attorney.  In

addition, Attorney Pori did not present an affidavit stating that Cramberg directed him to file an appeal and that defense counsel refused the request.  Without such support or facts, Cramberg's claim is vague, conclusory, and palpably incredible.  Moreover, counsel is not required to appeal every nonfrivolous issue, let alone issues that have no merit.  *See* United States v. Battle, 133 F. App'x 546, 548 (10th Cir. June 6, 2005) (unpublished) (citations omitted).

50.     After affording a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, the Court concludes that Cramberg failed to demonstrate constitutionally deficient performance by his attorney or that, but for his counsel's objectively deficient performance, there was a reasonable probability the result of the proceeding or plea would have been different.  Therefore, the Court recommends that the third claim of ineffective assistance of counsel be denied and dismissed.

51.     Alternatively, or in addition, the Court finds that Cramberg's claims are subject to dismissal based on the plea agreement's valid and enforceable waiver of appeal provision. [CR Doc. 37.] *See* United States v. Hahn, 359 F.3d 1315, 1324-29 (10th Cir. 2004) (discussing enforceability of an appellate waiver provision).  Cramberg agreed to waive an appeal of any sentence and fine that was within or below the applicable advisory guideline range.  His sentence and fine were within the applicable advisory guideline ranges.

52.     Cramberg further agreed to waive any collateral attack on his conviction under § 2255, except on the issue of counsel's ineffective assistance in negotiating or entering the plea or the waiver. [CR Doc. 37 at 6.] The Court concludes that none of Cramberg's claims of ineffective assistance of counsel attack the negotiation or entry of the guilty plea or waiver of appellate rights. Thus, all of the claims fall within the scope of the waiver and are barred.  The Court already determined that Cramberg voluntarily and knowingly entered into the plea agreement.  For

19

substantially the same reasons, the Court concludes that Cramberg voluntarily and knowingly entered into the appellate waiver.   In addition to the Court's recommendations that Cramberg's ineffective assistance of counsel claims be dismissed, the Court also recommends that Cramberg's § 2255 motion be denied and dismissed based on the valid and enforceable waiver provision in the plea agreement.

## **Recommended Disposition**

That all of Cramberg's ineffective assistance of counsel claims be denied and that the § 2255 motion [Doc. 6] and this action be dismissed, with prejudice.

That under Rule 11 of the Rules Governing Section 2255 cases and 28 U.S.C. § 2253(c)(2), a certificate of appealability not issue because Cramberg failed to make a substantial showing that he has been denied a constitutional right.


_Lorenzo F. Garcia_
Lorenzo F. Garcia
United States Magistrate Judge